# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

HEKO SERVICES, INC.,
*a Washington corporation*,

     Plaintiff,

   v.

MAKUSHIN BAY,
*Official Number 289678, its Engines,*
*Machinery, Appurtenances, etc., in rem*,
and RESOLVE AMERICAS HOLDINGS,
INC**.,** *a Florida corporation, in personam*,

     Defendants.

Case No. 3:25-cv-00125-SLG

## ORDER ON THREE PENDING MOTIONS

 Before the Court are three pending motions, each of which is resolved by this order:

 1. At Docket 14 is MAKUSHIN BAY, *in rem*, and Resolve Americas Holdings, Inc.'s (collectively "Resolve" or "Defendants") Motion to Dismiss and Motion for Rule of Law Regarding Arbitrability. Plaintiff Heko Services, Inc. ("Heko") responded in opposition at Docket 32, to which Defendants replied at Docket 35.

2. At Docket 15 is Defendants' Motion to Stay or Enjoin Arbitration Proceedings Pending Court's Decision on Arbitrability.[1] Plaintiff responded in opposition at Docket 27, to which Defendants replied at Docket 30. Oral argument was held on this motion on August 25, 2025.[2]

3. At Docket 28 is Heko's Cross-Motion for Order Compelling Arbitration. Defendants responded to Heko's Cross-Motion at Docket 30.[3] No reply was filed.[4]

For the reasons set forth below: (1) Defendants' Motion at Docket 14 is **GRANTED** insofar as this Court rules that the parties' dispute is arbitrable; the motion is otherwise **DENIED**; (2) Defendants' Motion at Docket 15 is **DENIED as moot**; and (3) Plaintiff's Cross-Motion at Docket 28 is **DENIED as moot.** Further, this action is **STAYED** pending the conclusion of the arbitration proceedings.

## FACTUAL BACKGROUND

Plaintiff Heko is a freight and cargo services provider headquartered in Seattle, Washington that transports cargo to destinations in Alaska.[5] Resolve

---

[1] At Docket 22, Defendants filed an Errata to Dockets 15, 15-4, and 16 to correct a case citation.

[2] Docket 31.

[3] *But see* Local Civil Rule 5.1(f)(2) ("[I]f a party seeks to address two motions in a single filing (*e.g.*, an opposition to summary judgment and a cross-motion for summary judgment), a separate filing for each document must be made.").

[4] "[Heko's] Cross Motion incorporates by reference Heko's Cross Motion to Compel Arbitration set forth in Heko's Opposition to Motion to Stay or Enjoin Arbitration and Cross Motion to Compel Arbitration [at Docket 27]." Docket 28 at 2.

[5] Docket 1 at 2-3, ¶¶ 3, 7.

operates the MAKUSHIN BAY, an ocean towing vessel based in Dutch Harbor, Alaska.[6]

In early 2024, Heko had several prospective contracts to transport and deliver cargo from Seattle, Washington, to Norton Sound, Alaska, and in the Kuskokwim Bay region of Alaska.[7] Heko had already chartered a barge, the ITB 252, to carry the cargo, but required an ocean towing vessel to transport the barge with its cargo.[8]

According to Heko's Complaint, beginning in April 2024 and continuing through mid-May 2024, Heko and Resolve "discussed using Resolve's ocean towing vessel, the MAKUSHIN BAY, to tow [Heko's chartered barge] and accompanying cargo between Seward and Norton Sound in the early summer of 2024, and for completing other tows in the Kuskokwim Bay region."[9] In mid-April 2024, Resolve sent Heko a proposed towage agreement ("Proposed

---

[6] Docket 1 at 2-3, ¶¶ 4, 8-9.

[7] Docket 1 at 3, ¶ 7.

[8] Docket 1 at 3, ¶ 7.

[9] Docket 1 at 3, ¶ 7. Because Heko's cargo was in Seattle, Heko "was simultaneously arranging with another towing company the towage of [Heko's chartered barge] for the first leg of the voyage from Seattle to Seward." Docket 1 at 3, ¶ 7.

Agreement").[10]  In mid-May 2024, Heko informed Resolve that Heko expected its barge to arrive in Seward from Seattle on June 13 or June 14, 2024.[11]

According to Heko's Complaint, on May 22, 2024, Heko advised Resolve that apart from one issue regarding the timing of payments, the Proposed Agreement generally "looked fine."[12]  At that time, Heko was preparing to enter into two towing contracts for cargo delivery with third parties: one contract to transport building modules and related cargo from Seattle to Norton Sound, and a second contract to transport gravel aggregate between Kongiganak and Platinum in the Kuskokwim Bay region.  Heko alleges that, on May 22, 2024, it executed the building modules contract, "knowing and relying upon its agreements with Resolve and another towing company to complete the tows of the ITB 252 from Seattle to Norton Sound."[13]  As of that date, Heko had not yet executed the gravel aggregate contract, but "intended to use the MAKUSHIN BAY for that contract."[14]

On May 23, 2024, Resolve sent Heko a revised proposed towage agreement (the "First Revised Agreement").[15]  That same day, Heko signed the First Revised

_____

[10] Docket 1 at 3, ¶ 9. The record does not appear to contain the Proposed Agreement. However, it appears that the parties do not dispute the terms of the Proposed Agreement.

[11] Docket 1 at 3-4, ¶ 10.

[12] Docket 1 at 4, ¶ 12.

[13] Docket 1 at 4, ¶ 12.

[14] Docket 1 at 4, ¶ 12.

[15] Docket 1 at 4, ¶ 12. The record does not appear to contain the First Revised Agreement. However, as is the case with the Proposed Agreement, the parties do not appear to dispute the

Agreement, but promptly raised three concerns with the agreement's terms.[16] As relevant here, in an email dated May 24, 2024, from Justin Buckley (Heko's co-manager) to A.W. McAfee (Resolve's West Coast Regional Manager) and Adam Buffington (Resolve's Facility Manager), Mr. Buckley expressed his concern that the First Revised Agreement did not explicitly reference the building modules transport from Seward to Norton Sound:

> The contract contemplates hauling gravel, which is great. But the first stage will be taking the barge up to Norton Sound to deliver some building mods that are on the barge as cargo. Not sure why that would be an issue, but since it wasn't explicit in the agreement I just want to make sure we're all on the same page.[17]

Mr. Buckley's email concluded by stating: "Let me know if you want to update the agreement for any of [the identified concerns]. Does June 23rd still look good for Seward?"[18]

On May 26, 2024, Mr. Buffington replied to Mr. Buckley; he wrote, "I will get with [Resolve's West Coast Regional Manager, A.W. McAfee] on these topics first thing Monday morning. I don't see an issue in revising the document or leaving it

_____

text of the First Revised Agreement.

[16] Docket 1 at 4-5, ¶ 13. Heko's three concerns were: (1) the interest rate for unpaid invoices; (2) the appropriate venue; and (3) the scope of the towing services to be provided. Docket 1 at 4-5, ¶ 13. This order focuses on the third concern, as the first two concerns are not in dispute.

[17] Docket 1 at 4-5, ¶ 13.

[18] Docket 1 at 4-5, ¶ 13.

as is."[19]  And the email also appeared to acknowledge the Seward to Norton Sound journey by stating: "We are scheduled to be in Seward in plenty of time to meet the June 23rd target date."[20]

On May 28, 2024, Resolve provided Heko with a second revised agreement (the "Towage Agreement").[21]  The Towage Agreement identifies Dutch Harbor as the place of delivery of the MASHUKIN BAY to Heko.[22]  The place of departure and place of destination are both identified as  "Kongig[a]nak, Alaska or Platinum, Alaska to be nominated by Hirer."[23]  Paragraph 11 of the agreement states that the "[c]argo is said to be construction aggregate on loaded voyage."[24]  And the "Commercial and Operational Details" section of the Towage Agreement contains a "Nature of services(s)" clause, which states in relevant part: "Towage of Tow between Kongignak [*sic*], Alaska and Platinum, Alaska in consecutive voyages at the customary and direct route always [*sic*] Tugmaster's discretion and within safe parameters of Tug and crew."[25]

---

[19] Docket 1 at 5, ¶ 14.

[20] Docket 1 at 5, ¶ 14.

[21] Docket 1 at 5-6, ¶ 15; *see* Docket 1-1 at 1-16. The Towage Agreement was a modified form contract from the Baltic and International Maritime Council ("BIMCO") trade association.

[22] Docket 1-1 at 2, ¶¶ 19-20. *See also* Docket 1-1 at 5, ¶ 5(a) (defining "Place of Delivery" as the location where the tug "shall be delivered to the Hirer").

[23] Docket 1-1 at 2, ¶¶ 30-31.

[24] Docket 1-1 at 1, ¶ 11.

[25] Docket 1-1 at 2, ¶ 29.

The Towage Agreement does not reference the transport of building modules from Seward to Norton Sound. But Plaintiff's Complaint alleges that: "As understood by the parties, and established by the Towage Agreement and corresponding email riders, Resolve agreed and promised to tow the cargo barge ITB 252 with Heko's cargo of building modules from Seward to two villages in Norton Sound, and to thereafter tow the barge with gravel between Platinum and Kongiganak."[26]

The Towage Agreement also contains an arbitration provision that provides in relevant part:

> This contract shall be governed by and construed in accordance with United States of America law and any dispute arising out of or in connection with this contract shall be referred exclusively to arbitration in Seattle, Washington in accordance with the United States maritime law or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this clause.[27]

On or about June 8, 2024, Heko and Resolve both signed the Towage Agreement.[28] And on or about June 12, 2024, the MAKUSHIN BAY departed Dutch Harbor and transited to Seward "to connect to the ITB 252 for towage to

---

[26] Docket 1 at 5-6, ¶ 15.

[27] Docket 1-1 at 12, ¶ 35(a) (bold omitted).

[28] *See* Docket 1-1 at 1, Cl. 1 ("Date and place of Agreement . . . 08 June 2024"); *but see* Docket 1 at 5-6, ¶ 15 ("On June 12, 2024, Heko and Resolve both signed the revised agreement"). The Court will consider June 8, 2024, as the date the Towage Agreement was signed. *See also* Docket 27 at 2 ("That contract, dated June 8, 2024, specifies where the tug was to be 'delivered' to Heko (Dutch Harbor)").

Norton Sound."[29]  Then, on June 15, 2024, the MAKUSHIN BAY took possession of Heko's barge, laden with building modules, six miles offshore of Seward and towed the barge to a commercial dock in Seward.[30]  The departure from Seward to Norton Sound was scheduled for June 18, 2024.[31]

According to Heko's Complaint, on June 18, 2024, "Resolve suddenly told Heko it refused to complete the towage to Norton Sound based on the initial towage to the Seward dock."[32]  Heko alleges that "Resolve's 'fleet team' refused to allow Resolve to complete the performance of the Towage Agreement because the MAKUSHIN BAY and its captain had difficulty towing and docking the barge" in Seward.[33]  Accordingly, Resolve informed Heko that it "would not tow the ITB 252 to Norton Sound."[34]  According to Heko, on June 19, 2024, Resolve claimed "the cargo of building modules was 'not what was expected' and that Resolve only agreed to tow 'some' cargo and gravel aggregate."[35]

---

[29] Docket 1 at 6, ¶ 16.

[30] Docket 1 at 6, ¶ 16.

[31] Docket 1 at 6, ¶ 16.

[32] Docket 1 at 6, ¶ 17.

[33] Docket 1 at 7, ¶ 17.

[34] Docket 1 at 7, ¶ 18. Heko asserts that fault lies with either the MAKUSHIN BAY being an unseaworthy tug or its captain not holding "the requisite qualifications, experience and skill to complete the towage as agreed." Docket 1 at 7, ¶ 18. But the seaworthiness of the vessel and the skill of the captain are of no import to this order.

[35] Docket 1 at 7, ¶ 20.

According to Heko, on June 28, 2024, Resolve told Heko the voyage was a "no-go" and "categorically refused to complete its performance of the Towage Agreement."[36] "[T]he MAKUSHIN BAY thereafter departed Seward and towed Resolve's own empty barge to Dutch Harbor."[37]

"On July 9, 2024, Resolve proposed to Heko that the parties 'mutually terminate' or otherwise cancel the Towage Agreement, and proposed a new revised contract for Heko's previously anticipated gravel towage."[38] But Heko rejected this proposal, "as it failed to compensate Heko for its losses and damages caused by Resolve's unjustified refusal and failure to complete the Towage Agreement."[39]

"On August 1, 2024, Heko formally notified Resolve that Resolve materially breached the Towage Agreement, causing Heko substantial damages."[40] Heko alleges that "Resolve's breaches caused Heko damages" of "at least $353,497.20 plus accrued interest."[41]

---

[36] Docket 1 at 8, ¶ 22.

[37] Docket 1 at 8, ¶ 22. Heko then obtained another towing company to transport its cargo. Docket 1 at 8-9, ¶ 23. "The towage was completed successfully and without difficulty," albeit not on time and at substantial additional cost to Heko. Docket 1 at 8, ¶ 23.

[38] Docket 1 at 9, ¶ 24.

[39] Docket 1 at 9, ¶ 24.

[40] Docket 1 at 9, ¶ 24.

[41] Docket 1 at 9, ¶ 26.

On June 13, 2025, Heko's counsel sent Resolve a Notice of Demand for Arbitration.[42]  The notice asserted that Resolve had breached the parties' contract, that Heko was demanding arbitration of its claims, and identified its arbitrator.[43]

On June 16, 2025, Heko initiated this action; its Complaint alleges four claims. The first three claims are maritime claims: (1) Foreclosure of Maritime Lien;[44] (2) Breach of Contract;[45] and (3) Equitable or Quasi Estoppel.[46]  This order primarily considers Heko's fourth claim: Referral to Arbitration.[47]  Heko alleges that "[i]n Clause 35 of the Towage Agreement, Heko and Resolve agreed to refer any dispute arising out of the Towage Agreement exclusively to arbitration."[48]

On July 1, 2025, Resolve identified its arbitrator.[49]  On August 1, 2025, the two arbitrators appointed the third arbitrator as panel Chair.[50]

On August 6, 2025, Resolve filed its Motion to Dismiss and Motion for Rule of Law Regarding Arbitrability at Docket 14 and its Motion to Stay or Enjoin

---

[42] Docket 1-2.

[43] Docket 1-2 at 1.

[44] Docket 1 at 9-10, ¶ 28.

[45] Docket 1 at 10, ¶¶ 30-31.

[46] Docket 1 at 10, ¶ 33.

[47] Docket 1 at 10-11, ¶¶ 34-36.

[48] Docket 1 at 10-11, ¶¶ 34-36; *see* Docket 1-1 at 12, ¶ 35(a).

[49] Docket 27 at 4.

[50] Docket 27 at 4.

Arbitration Proceedings at Docket 15.  And, on August 18, 2025, Heko filed its Cross Motion to Compel Arbitration at Docket 28.

## JURISDICTION

The Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) as Heko alleges the breach of a maritime contract.  The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties have diverse citizenship and the amount in controversy exceeds $75,000.00.[51]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that any written agreement "to settle by arbitration a controversy thereafter . . . shall be valid, irrevocable, and enforceable . . . ."[52]  Pursuant to the FAA, a party "aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[53]  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[54]

---

[51] Docket 1 at 2, ¶ 1.

[52] 9 U.S.C. § 2.

[53] 9 U.S.C. § 4.

[54] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The FAA "reflects the fundamental principle that arbitration is a matter of contract."[55] And yet "[t]he standard for demonstrating arbitrability is not high."[56] The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including when] the problem at hand is the construction of the contract language itself."[57]

"[T]he question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[58] "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[59] The FAA mandates that a court,

> upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[60]

---

[55] *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147 (2024) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

[56] *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

[57] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) (citation omitted).

[58] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

[59] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

[60] 9 U.S.C. § 3.

"[Section] 3 [of the FAA] ensures that the parties can return to federal court if arbitration breaks down or fails to resolve the dispute."[61] "That return ticket is not available if the court dismisses the suit rather than staying it."[62] Therefore, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding."[63] Section 3 of the FAA "overrides any discretion a district court might otherwise have had to dismiss a suit when the parties have agreed to arbitration."[64]

## DISCUSSION

### I. Resolve's Motion to Dismiss

In its motion to dismiss, Resolve asserts that there is no contract between Heko and Resolve "to move a barge loaded with building modules approximately 1,500 miles across the Bering Sea from Seward to Norton Sound."[65] Thus, Resolve maintains that "[t]he court should dismiss the Complaint because Plaintiff's Claims are all premised on a nonexistent contract to transport a barge loaded with building modules from Seward to Norton Sound."[66]

---

[61] *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024).

[62] *Id.* (citation omitted).

[63] *Id.* at 478.

[64] *Id.* at 477.

[65] Docket 14 at 2.

[66] Docket 14 at 13.

Because, as discussed below, the Court finds that the parties' dispute is arbitrable, the Court agrees with Heko that whether Heko has stated a valid claim for a breach of contract is a question for the arbitrators. Thus, Resolve's motion to dismiss for failure to state a breach of contract claim is **DENIED**.

## II. Resolve's Motion for Rule of Law Regarding Arbitrability and Heko's Cross-Motion for Order Compelling Arbitration

### A. Whether a Valid Agreement to Arbitrate Exists

The parties do not dispute that they entered into a valid agreement to arbitrate, at least with respect to the towage of gravel in the Kuskokwim region, and the Court so finds.[67]

### B. Whether the Towage Agreement Encompasses the Dispute at Issue

The parties agreed in the Towage Agreement to arbitrate "any dispute arising out of or in connection with" the Towage Agreement.[68] At issue is "whether the agreement [to arbitrate] encompasses the dispute at issue."[69] Resolve maintains that the Towage Agreement does not include any agreement to transport the building modules from Seward to Norton Sound, and hence the arbitration clause in the Towage Agreement is inapplicable to this dispute.[70]

---

[67] "Resolve agrees that the Kuskokwim Bay Towage Agreement exists and contains an arbitration clause." Docket 30 at 3.

[68] Docket 1-1 at 12, ¶ 35(a).

[69] *Chiron Corp.*, 207 F.3d at 1130.

[70] Docket 30 at 3.

In its opposition to Resolve's motion to stay the arbitration proceedings, Heko cites to several cases in which courts broadly construed arbitration clauses that contained language similar to that at issue here—"arising out of or in connection with"—to require arbitration of the dispute.[71]

First, in *Pennzoil*, the parties' relationship was governed by several different agreements, but only some of the agreements included an arbitration clause, including the parties' joint operating agreement.[72] One party moved to compel arbitration of the parties' dispute pursuant to that agreement, which provided that "[a]ny dispute, controversy or claim arising out of or in relation to or in connection with [the joint operating agreement] . . . shall be exclusively and finally settled by arbitration."[73] The Fifth Circuit affirmed the district court's order granting the motion to compel arbitration. The Fifth Circuit explained that this terminology constituted an "extremely broad arbitration provision."[74] "Broad arbitration clauses" containing this language "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to

---

[71] Docket 27 at 6 (first citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy*, 139 F.3d 1061, 1067 (5th Cir. 1998); then citing *Simula, Inc.,* 175 F.3d at 721; then citing *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983); and then citing *CixxFive Concepts, LLC v. Getty Images, Inc.*, Case No. C19-386-RSL, 2020 WL 3798926 (W.D. Wash. July 7, 2020)).

[72] *Pennzoil*, 139 F.3d at 1066-67.

[73] *Id.* at 1064.

[74] *Id.* at 1068.

Case No. 3:25-cv-00125-SLG, *Heko Services, Inc. v. MAKUSHIN BAY, et al.*
Order on Three Pending Motions
Page 15 of 24
Case 3:25-cv-00125-SLG    Document 36    Filed 02/04/26    Page 15 of 24

the contract regardless of the label attached to the dispute."[75] Given the breadth of the arbitration clause, the Fifth Circuit held, "it is not necessary that the dispute arise out of the [joint operating agreement] to be arbitrable—but only that the dispute 'relate to' or be 'connected with' [that agreement]."[76]

In *Simula*, a side-airbag inventor entered into a set of three contracts with BMW subsidiaries to integrate its airbags into BMW vehicles; each contract contained an arbitration clause that provided for arbitration of "[a]ll disputes arising in connection with this Agreement."[77] The inventor brought an antitrust claim, a Lanham Act claim, and claims for defamation and misappropriation of trade secrets.[78] The BMW subsidiaries moved to compel arbitration of these claims, which the district court granted. The Ninth Circuit affirmed and held these claims were all arbitrable. The Circuit first observed that "[e]very court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly."[79] The Circuit Court then "likewise conclude[d] that the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin

---

[75] *Id.* at 1067.

[76] *Id.* at 1068 (citation omitted).

[77] *Simula,* 175 F.3d at 718-20.

[78] *Id.* at 719-20.

[79] *Id.* at 721.

or genesis in the contract."[80]  The Court added, "[t]o require arbitration, Simula's factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability."[81]

And in *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, the Ninth Circuit held that an arbitration clause that used the phrase "arising hereunder" "is intended to cover a much narrower scope of disputes, *i.e.*, only those relating to the interpretation and performance of the contract itself," while an arbitration clause "arising out of or relating to this agreement" encompasses a broader scope of disputes.[82]

In its reply to Heko's opposition to the motion to stay arbitration, Resolve maintains that "the current dispute is for performance of entirely separate work that is not covered by [the Towage Agreement], does not arise from that agreement, and is not connected to that agreement."[83]  Resolve characterizes the "six mile tow of ITB 252 into Seward when it arrived in Resurrection Bay from Seattle" as a "test"[84] and maintains the Towage Agreement does not apply to the towage of the building modules from Seward to Norton Sound because the Towage Agreement

---

[80] *Id.*

[81] *Id.* (citing *Mitsubishi Motors*, 473 U.S. at 624 n.13).

[82] *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983).

[83] Docket 30 at 6.

[84] Docket 30 at 8-9.

does not identify Seward as a point of departure, does not identify Norton Sound as a destination, and does not identify building modules as cargo.[85]

Resolve cites to several Ninth Circuit cases for the proposition that "when there is no agreement to arbitrate for the work at issue in a lawsuit, a party cannot be forced into arbitration, even if they agreed to arbitrate disputes arising from a different contract for different work."[86] Heko responds that the cases cited by Resolve are inapplicable because they "concern[] two separate and independent, signed contracts, one with an arbitration agreement and one without."[87]

First, in *Walmart*, the plaintiff entered into an arbitration agreement when the plaintiff consented to the Terms of Use when purchasing tires on Walmart.com.[88] The plaintiff then later entered into a separate tire servicing contract at a Walmart Auto Care Center that did not contain an arbitration clause.[89] The Ninth Circuit affirmed the district court's finding that the arbitration provision for the online tire purchase did not apply to the plaintiff's claims arising out of Walmart's alleged

---

[85] Docket 30 at 2, 6-7. *See also* Docket 14 at 2. ("Heko's claims are premised on an entirely different supposed contract to move a barge loaded with building modules approximately 1,500 miles across the Bering Sea from Seward to Norton Sound—not between Kongiganak and Platinum. No such contract is filed with this Court, and there is no evidence supporting the existence of such a contract.").

[86] Docket 30 at 2 (emphasis omitted) (first citing *Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023); then citing *Perez v. Discover Bank*, 74 F.4th 1003, 1010 (9th Cir. 2023); and then citing *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 718 (9th Cir. 2020)).

[87] Docket 32 at 14-15.

[88] *Walmart,* 57 F.4th at 679.

[89] *Id.* at 679-80.

breach of the service contract because the two agreements were "separate, independent agreements" for two distinct transactions.[90]

In *Revitch*, the Ninth Circuit refused to apply an arbitration agreement between the plaintiff and AT&T (who was not the defendant in the case) to a dispute between the plaintiff and the defendant, DIRECTV, which had been acquired seven years later by AT&T.[91] The Circuit held that when the plaintiff "signed his wireless services agreement with AT&T . . . he could not reasonably have expected that he would be forced to arbitrate an unrelated dispute with DIRECTV, a satellite television provider that would not become affiliated with AT&T until years later."[92]

Similarly, the Ninth Circuit in *Perez* held that an arbitration agreement in one contract did not encompass the plaintiff's claim related to a second contract that was entered into eight years later.[93] In that case, the plaintiff entered into a student loan agreement with Citibank that contained an arbitration provision stating: "either party, including Citibank's successors or assigns, could elect binding arbitration for any claims 'arising out of or in connection with [the] loan."[94] One year later,

---

[90] *Id.* at 683.

[91] *Revitch*, 977 F.3d at 715, 718.

[92] *Id.* at 718.

[93] *Perez*, 74 F.4th at 1010–11.

[94] *Id.* at 1006 (brackets in original).

Discover Bank acquired ownership of Plaintiff's loan with Citibank, and then seven years after the Discover Bank acquisition, plaintiff's loan application from Discover Bank was denied.[95]

The plaintiff sued Discover Bank under anti-discrimination statutes; Discover Bank responded by moving to compel the plaintiff to "arbitrate her discrimination claims via the Citibank agreement."[96] The Ninth Circuit rejected this argument and analogized the case to *Revitch*: "[J]ust as the *Revitch* plaintiff could not have anticipated that his cell phone agreement would bind him to arbitration for claims accruing seven years later in an unrelated dispute, Perez 'could not reasonably have expected that she would be forced to arbitrate the unrelated' claims that Discover discriminated against her eight years later when it denied her application for a 'new, distinct loan.'"[97]

The Court finds that the cases cited by Resolve are distinguishable from the dispute between Heko and Resolve. *Walmart* and *Perez* each involved two wholly separate transactions at two different times. *Revitch* is also inapposite. In *Revitch*, while the plaintiff did agree to an arbitration clause with AT&T and its successors, the plaintiff did not agree at that time to arbitrate claims that accrued years later

---

[95] *Id.* at 1006-07.

[96] *Id.* at 1007-10.

[97] *Id.* at 1010 (brackets omitted) (quoting *Revitch*, 977 F.3d at 718).

against the later-acquired DIRECTV.[98]  Here, while the Towage Agreement does not explicitly reference a Seward to Norton Bay towage, according to Heko, the two towages were to occur in succession in the summer of 2024.

According to Resolve, "Heko's position [is] that *any* claim regarding *any* proposed tow between the parties is subject to the arbitration clause contained in the Kuskokwim Bay Towage Agreement."[99]  The Court disagrees; the only issue is whether the dispute regarding a Seward to Norton Sound building module towage to commence in June 2024 arises out of or in connection with the parties' June 2024 Towage Agreement.

Of note, the Towage Agreement contains no integration clause. "If a [maritime] contract is not integrated, the parol evidence rule does not apply" and thus, "[t]he court can admit all evidence relevant to the parties' intent [with respect to the maritime contract], including negotiations and prior agreements."[100] Accordingly, the Court is not barred from considering parol evidence, such as the parties' e-mails, oral statements, and actions, when determining whether the

---

[98] *Revitch*, 977 F.3d at 714–17.

[99] Docket 30 at 11.

[100] *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div.*, 852 F.2d 493, 495 (9th Cir. 1988). *See also Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961) (noting oral contracts are regarded as valid by maritime law); *Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967) (holding that alteration, modification, or waiver of maritime contract provisions may be implied from the circumstances surrounding performance of the contract).

parties' dispute regarding a Seward to Norton Sound tow is in connection with the Towage Agreement.

First, Resolve's knowledge and actions demonstrate that Resolve may have assented to Heko's proposal to tow the building modules from Seward to Norton Sound. In Mr. Buckley's email to both of Resolve's employees, Mr. Buckley asks: "Let me know if you want to update the agreement for any of those items. Does June 23rd still look good for Seward?"[101] In his email response, Mr. Buffington responded: "We are scheduled to be in Seward in plenty of time to meet the June 23rd target date."[102]

Second, after Heko noted to Resolve that the Towage Agreement lacked an explicit reference to a Seward to Norton Sound towage, Resolve's representative responded by stating, "I don't see an issue in revising the document or leaving it as is"—a statement that could reasonably be read to encompass the tow from Seward.[103]

Third, the Towage Agreement specifies that the place of delivery of the tug to Heko was Dutch Harbor.[104] And it appears to be undisputed that the vessel left Dutch Harbor to travel to Seward on or around June 12, 2024. Thus, arguably

---

[101] Docket 1 at 4-5, ¶ 13.

[102] Docket 1 at 5, ¶ 14.

[103] Docket 1 at 5, ¶ 14.

[104] Docket 1-1 at 2, ¶¶ 19-20.

Resolve commenced its performance under the Towage Agreement on that date.[105]

Just like the arbitration clause in *Pennzoil*, the arbitration clause in the Towage Agreement uses the broad language of "any dispute arising out of or in connection with."[106] Thus, the Court will broadly construe the arbitration clause in the Towage Agreement to encompass the dispute on whether the parties agreed that Resolve would tow the building modules from Seward to Norton Sound.

Although the Court finds that the parties' Towage Agreement encompasses the parties' dispute regarding the Seward to Norton Sound building modules towage, the Court expresses no opinion as to whether the parties agreed that Resolve would tow the building modules from Seward to Norton Sound. Rather, this order finds only that this dispute is in connection with the parties' Towage Agreement and is therefore subject to arbitration under the terms of that agreement.

Therefore, Resolve's motion for rule of law regarding arbitration is GRANTED insofar as the Court finds the parties' dispute to be arbitrable.

Further, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels

---

[105] Docket 27 at 2; *see* Docket 1-1 at 2, ¶¶ 19-20; Docket 1 at 6, ¶ 16.

[106] Docket 1-1 at 12, ¶ 35(a).

Case No. 3:25-cv-00125-SLG, *Heko Services, Inc. v. MAKUSHIN BAY, et al.*
Order on Three Pending Motions
Page 23 of 24

the court to stay the proceeding."[107]  Heko requested a stay of this action pending arbitration;[108] that relief is mandated and accordingly **GRANTED**.

**CONCLUSION**

In light of the foregoing, IT IS ORDERED:

1.      Resolve's Motion at Docket 14 is **DENIED** as to the motion to dismiss and **GRANTED** as to the motion for rule of law regarding arbitrability;

2.      Having determined that the matter is subject to arbitration, Resolve's Motion to Stay or Enjoin Arbitration Proceedings Pending Court's Decision on Arbitrability at Docket 15 is **DENIED as moot**;

3.      Resolve having expressly stated that if the Court rules this dispute is arbitrable, it will participate in the ongoing arbitration proceedings,[109] Heko's Cross-Motion for Order Compelling Arbitration at Docket 28 is **DENIED as moot**; and

4.      This matter is **STAYED.** The parties shall file a status report with the Court **within 7 days of the conclusion of arbitration**.

DATED this 4th day of February 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[107] *Spizzirri*, 601 U.S. at 478; 9 U.S.C. § 3.

[108] Docket 15 at 1.

[109] *See* Docket 30 at 5 ("Resolve will of course participate in those [arbitration] proceedings rather than default on Heko's meritless claims.  No Order compelling arbitration is necessary.").